UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BOBBY D. REED,

            Plaintiff,

    v.                                                                CAUSE NO. 3:19-cv-547 DRL

COMMISSIONER OF SOCIAL SECURITY,

            Defendant.

OPINION & ORDER

Bobby D. Reed seeks judicial review of the Social Security Administration's decision denying his application for disability insurance benefits under Title II of the Social Security Act, *see* 42 U.S.C. § 423(a), and for Supplemental Security Income under Title XVI of the Act, *see* 42 U.S.C. § 1382c(a)(3). Mr. Reed requests this court reverse the administrative decision and award benefits, or alternatively remand his claim for further consideration. Having reviewed the underlying record and the parties' arguments, the court remands the case.

BACKGROUND

In June and July 2012, Mr. Reed filed an application for Social Security disability insurance benefits and supplemental security income, alleging a disability onset date of January 16, 2012 [R. 207-14, 223-30]. His claims were denied [R. 131-48, 154-67]. On November 19, 2013, a hearing was held before Administrative Law Judge Mario G. Silva [R. 61-102 (transcript)]. On December 16, 2013, the ALJ denied Mr. Reed benefits, concluding that he was not disabled because he could perform a significant number of jobs in the economy despite the limitations caused by his impairments [R. 16-35]. Mr. Reed challenged the ALJ's decision by timely filing a request for review with the Appeals

Council [R. 14]. The Appeals Council denied review [R. 1-6]. Because the Appeals Council denied review, the ALJ's decision was the agency's final decision. *See* 20 C.F.R. §§ 404.981, 416.1481.

Mr. Reed filed this appeal on April 21, 2015 [R. 712-26]. On June 28, 2016, this court reversed the Commissioner's decision and remanded the claim for further administrative proceedings [R. 745-77 (opinion)]. *See Reed v. Colvin*, 2016 U.S. Dist. LEXIS 84110 at 18 (N.D. Ind. June 28, 2016) (Simon, J.). In September 2016, the Appeals Council remanded the claim for a new hearing and decision [R. 778-83]. On March 22, 2017, a second hearing was held before ALJ Romona Scales [R. 642-85 (transcript)]. A supplemental hearing was held in June 2018 [R. 628-641]. In August 2018, ALJ Scales found Mr. Reed not disabled [R. 584-609]. Mr. Reed requested review of this decision, but the Appeals Council denied the request for review [R. 566-72, 577-83], making the ALJ's decision final. *See* 20 C.F.R. §§ 404.981, 416.1481.

Thereafter, Mr. Reed timely filed her complaint with an opening brief (ECF 10). The Social Security Administration timely filed a response (ECF 11). Mr. Reed never replied. The matter is ripe for disposition.

STANDARD

The court has authority to review the ALJ's decision under 42 U.S.C. § 405(g); however, review is bound by a strict standard. Because the Council denied review, the court evaluates the ALJ's decision as the Commissioner's final word. *See Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). The ALJ's findings, if supported by substantial evidence, are conclusive and nonreviewable. *See Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence is such evidence that "a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and may well be less than a preponderance of the evidence, *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007) (citing *Richardson*, 402 U.S. at 401). If the ALJ has relied on reasonable evidence and built an "accurate and logical bridge between the evidence and her conclusion," the decision must stand. *Thomas v. Colvin*,

745 F.3d 802, 806 (7th Cir. 2014). Even if "reasonable minds could differ" concerning the ALJ's decision, the court must affirm if the decision has adequate support. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009) (quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

DISCUSSION

When considering a claimant's eligibility for disability benefits, an ALJ must apply the standard five-step analysis: (1) is the claimant currently employed; (2) is the claimant's impairment or combination of impairments severe; (3) do her impairments meet or exceed any of the specific impairments listed that the Secretary acknowledges to be so severe as to be conclusively disabling; (4) if the impairment has not been listed by the Secretary as conclusively disabling, given the claimant's residual functional capacity, is the claimant unable to perform her former occupation; (5) is the claimant unable to perform any other work in the national economy given her age, education and work experience. 20 C.F.R. § 404.1520; *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). The claimant bears the burden of proof until step five, where the burden shifts to the Commissioner to prove that the claimant can perform other work in the economy. *See id.*

The ALJ found that Mr. Reed satisfied step one because he hadn't engaged in substantial gainful activity since January 16, 2012, the alleged onset date [R. 590]. The ALJ then found that Mr. Reed had the following severe impairments: degenerative disc disease of the cervical and lumbar spines; obesity; and anxiety and depression [*Id.*]. He also had a non-severe impairment history of remote bilateral carpal tunnel syndrome release and epicondylitis [*Id.*]. Next, the ALJ found that Mr. Reed's impairments or combination of impairments didn't meet or exceed any of the specific impairments listed that are so severe as to be conclusively disabling [R. 590-91].

The ALJ then found that Mr. Reed had the residual functional capacity (RFC) to perform "sedentary work" as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a) [R. 591]. He could occasionally stoop, crouch, kneel, and balance [*Id.*]. He couldn't crawl or climb ladders [*Id.*]. He could frequently

handle/finger bilaterally and needed to alternate between sitting and standing positions for up to ten minutes each hour [*Id.*]. He could understand, remember, and carry out simple, routine, unskilled tasks [*Id.*]. He could engage in occasional, brief, superficial interaction with the public and could manage changes within a routine, simple work environment [*Id.*].

At step four, the ALJ determined, based on her RFC findings, that Mr. Reed was unable to continue performance of his past relevant work [R. 599]. At step five, however, the ALJ found that considering Mr. Reed's age, education, work experience, and RFC, there are jobs that exist in the national economy that he could perform [R. 600]. Specifically, the ALJ found that Mr. Reed was capable of performing the requirements of a document preparer (DOT 249.587-018) and final assembler (DOT 713.687-018) [R. 601]. Because of her determination at step five, the ALJ found that Mr. Reed was not disabled [R. 601].

Mr. Reed says the ALJ made two mistakes that necessitate remand: (1) the ALJ improperly weighed the medical opinion evidence; and (2) the ALJ improperly evaluated Mr. Reed's subjective symptom statements.

A.     *The ALJ Improperly Weighed the Medical Opinion Evidence on this Record.*

Mr. Reed first argues that the ALJ erred in giving "little weight" to the opinions from his treating pain medicine specialist, Dr. Cha. Dr. Cha opined on numerous occasions about the scope of Mr. Reed's impairments. In 2011, Dr. Cha observed moderate to severe neck and back pain leading eventually to a diagnosis of cervical spondylosis, cervicalgia, and degeneration and displacement of intervertebral discs in the back [R. 330-31]. In January 2013, he indicated that it wasn't 100 percent clear whether Mr. Reed was disabled but noted that he couldn't engage in heavy lifting or twisting due to his history of neck pain [R. 513, 597]. Later in 2013, Dr. Cha stated that Mr. Reed's neck and back pain made it impossible for him to maintain a job consistently, but he offered no particular limitations [R. 516, 597-98]. By this time, his treatment had progressed from prescription medicine to steroid

injections and lumbar ablation [R. 430-31, 444-45]. In September 2013, Dr. Cha opined that Mr. Reed could lift up to 15 pounds with a significant number of breaks throughout the day, but that his pain had become "debilitating," interfering with his ability to work and perform basic activities at home [R. 540-43]. In November 2013, Dr. Cha completed a medical source statement opining that Mr. Reed could sit for one hour and stand for one hour in an eight-hour workday, could lift a maximum of 20 pounds, and would experience pain periodically that would interfere with his attention [R. 544-50]. Lumbar medial branch blocks over time afforded only temporary relief, as did further injections in 2014 and 2015. In January 2016, Dr. Cha opined that Mr. Reed could not maintain employment because of his chronic pain symptoms [R. 598, 1163-64]. Treatment for his neck and back continued into 2018. The ALJ gave these series of opinions little weight [R. 598].

A treating physician's opinions are entitled to controlling weight if they are "well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); *see White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005). Once "well-supported contradicting evidence is introduced," *see Newman v. Colvin*, 211 F. Supp. 3d 1126, 1129 (N.D. Ind. 2016), the treating's physician's opinion no longer has controlling weight and instead becomes "just one more piece of evidence for the administrative law judge to weigh." *Bauer v. Astrue*, 532 F.3d 606, 608 (7th Cir. 2008).

In choosing not to give controlling weight to a treating physician's opinion, "the ALJ is not permitted simply to discard it." *Scrogham v. Colvin*, 765 F.3d 685, 697 (7th Cir. 2014). Instead, the ALJ is required to weigh the following factors: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) whether the physician's opinion is supported by relevant evidence; (4) whether the physician's opinion is consistent with the record as a whole; and (5) whether the treating physician was a specialist in the relevant area. *Id.* (citing 20 C.F.R. §§ 404.1527(c)(2-5)). The ALJ need not explicitly refer to each factor so long as

"[her] decision makes clear that [she] was aware of and considered many of the factors." *Schreiber v. Colvin*, 519 F. Appx. 951, 959 (7th Cir. 2013); *see Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (ALJ need only "minimally articulate[] his reasons for crediting or rejecting evidence of disability") (citation omitted). The court "reviews the record as a whole but does not attempt to substitute its judgment for the ALJ's by reweighing the evidence . . . or reconsidering facts or the credibility of witnesses." *Beardsley v. Colvin*, 758 F.3d 834, 836-37 (7th Cir. 2014).

The ALJ discussed the number of years that Dr. Cha had treated Mr. Reed—at the time of the second ALJ hearing, Dr. Cha had been treating him for over six years [*see* R. 349 (first appointment was on January 21, 2011)]—and acknowledged that Dr. Cha was his treating physician [R. 597-98]. She discussed the frequency of examinations [R. 597 ("At that time, he was seeing the pain management doctor every three months.")]. She considered Dr. Cha's expertise in pain management [*Id*.]. Nevertheless, the ALJ discounted Dr. Cha's opinions [R. 598 ("The undersigned considered the treating relationship the claimant has with Dr. Cha and the number of years in which he treated with the claimant, but that is not the end of the analysis.")]. The ALJ determined that the doctor's opinions had several internal inconsistencies and conflicted with other opinions from medical experts.

An ALJ's job is to weigh conflicting evidence from medical experts. *See Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996). However, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Vanprooyen v. Berryhill*, 864 F.3d 567, 573 (7th Cir. 2017) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)); *see* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). An opinion from a treating or examining physician usually deserves greater credibility because they have "greater familiarity" with the specific claimant's circumstances. *Gudgel*, 345 F.3d at 470. Still, overreliance on a treating physician's opinion isn't preferred. For example, "many physicians . . . will often bend over backwards to assist a patient in obtaining benefits." *Hofslien v. Barnhart*, 439 F.3d 375,

377 (7th Cir. 2006). The treating physician is often "not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." *Id.* Accordingly, a treating physician's opinion is not automatically entitled to controlling weight. *See id.*

Dr. Cha was Mr. Reed's treating physician, board-certified in pain management, with years of treatment together, so ordinarily his opinion is entitled to greater weight than contradictory medical opinions; but the ALJ identified various inconsistencies within Dr. Cha's opinion that led her to discount his opinion. The record also includes other medical opinions, from appointments with Dr. Inabnit from August 2012 [R. 377, 594] and October 2015 [R. 595, 1149]; from a non-examining physician Dr. Goldstein [R. 599, 639, 1297-1305]; from state agency medical consultant Dr. Ruiz, who offered opinions for Mr. Reed in August 2012 [R. 105-06, 597] and November 2015 [R. 597, 731-33]; from state agency medical consultant Dr. Eskonen, who offered an opinion for Mr. Reed in December 2012 [R. 118, 597]; and from Dr. Sands in February 2016 [R. 597, 741-42]. The court now turns to the ALJ's handling of these identified inconsistencies and other medical opinions.

The first internal inconsistency the ALJ noted with Dr. Cha's opinion was that Dr. Cha limited Mr. Reed's abilities to lift, carry, sit, stand, and walk in late 2013, but that earlier that year Dr. Cha only seemed to limit the claimant's heavy lifting and twisting while not addressing limitations regarding sitting, standing, and walking [R. 513, 598]. Cases collectively hold, however, that an earlier statement that did not address certain impairments is not necessarily inconsistent with a later, more detailed, statement from the treating specialist. *See Hutsell v. Massanari*, 259 F.3d 707, 712 (8th Cir. 2001) (treating doctor's silence does not constitute substantial evidence supporting an RFC when doctor was not asked to express an opinion on matter and did not do so, particularly when doctor did not discharge claimant from treatment); *Rosa v. Callahan*, 168 F.3d 72, 82 (2d Cir. 1999) ("Commissioner was precluded from relying on the consultants' omissions as the primary evidence supporting its denial of benefits"); *Allen v. Bowen*, 881 F.2d 37, 41-42 (3d Cir. 1989) (physician's silence on issue was not

affirmative evidence that physician considered claimant to have no restrictions on that issue). The Social Security Administration cites to no authority that would dispute this point. This point seems more cogent given that, like some patients, Mr. Reed's conditions worsened over time. It would seem of no moment then that a statement later in a given year might yield more limitations. The court accordingly finds that the ALJ incorrectly identified an inconsistency here. Even Dr. Cha commented in January 2013 that it was "not clear as of yet" how limited Mr. Reed's conditions were [R. 513]. Dr. Cha was entitled to offer a more detailed analysis in his follow-up examinations. *See, e.g.*, *Allen*, 881 F.2d at 41-42.

The ALJ next said an internal inconsistency existed because Dr. Cha noted that Mr. Reed was improving with injection therapy and medications [R. 598]. The ALJ opined that she expected the reported favorable therapeutic results to increase Mr. Reed's exertional level, not decrease it [*Id.* ("In addition, Dr. Cha continues to treat the claimant with pain medications, occasional injections and radiofrequency ablation. Clearly, this must be working otherwise why would Dr. Cha continue to prescribe such treatment modalities.")]. Mr. Reed argues that this alleged inconsistency is erroneous. ECF 10 at 20. The court agrees with Mr. Reed that his response to treatment is not inconsistent with Dr. Cha's opinions.

"[T]here can be a great distance between a patient who responds to treatment and one who is able to enter the workforce." *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). Just "because one is characterized as 'stable' or 'improving' does not necessarily mean that [he] is capable of doing light work." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014) (finding no evidence that claimant had improved to point of light work even though medical notes showed that claimant's health consistently improved for twelve months after stroke). Indeed,

> A person who has a chronic disease, whether physical or psychiatric, and is under
> continuous treatment for it with heavy drugs, is likely to have better days and worse
> days; that is true of the plaintiff in this case. Suppose that half the time [he] is well

> enough that [he] could work, and half the time [he] is not. Then [he] could not hold
> down a full-time job.

*Bauer*, 532 F.3d at 609 (citing *Watson v. Barnhart*, 288 F.3d 212, 217-18 (5th Cir. 2002); *Washington v. Shalala*, 37 F.3d 1437, 1442-43 (10th Cir. 1994)). The record repeatedly refers to Mr. Reed's improvement as temporary before his pain returns [R. 74-75, 1077, 1319, 1324], hence no doubt the reason in part that Dr. Cha pivoted his treatment as time progressed—from prescription medicine eventually to injections, ablation, and other attempts at treatment. This is not inconsistent with Dr. Cha's opinions regarding what Mr. Reed could do if he was placed in a competitive work environment on a sustained basis, 8 hours a day, 40 hours a week.

An added and significant concern is that the ALJ seemed to "play doctor" when she relied on a third so-called inconsistency—that Dr. Cha's opinion conflicted with diagnostic imaging tests. As this circuit has repeatedly stated, an ALJ must not succumb to the temptation to "play doctor." *See, e.g.*, *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000); *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990). This circuit has provided the following rationale for this concern:

> The medical expertise of the Social Security Administration is reflected in regulations;
> it is not the birthright of the lawyers who apply them. Common sense can mislead; lay
> intuitions about medical phenomena are often wrong.

*Schmidt*, 914 F.2d at 118. "Playing doctor" occurs when an ALJ substitutes her own judgment for that of the doctor while leaving unexplained why the ALJ's findings were inconsistent with the doctor's opinion. *Clifford*, 227 F.3d at 870. The ALJ must cite to medical reports or opinions that contradict the doctor's opinion and support her conclusion that the inconsistency has a basis in fact. *See id.*

Here, Dr. Cha stated that his opinions finding a disability were based on MRI findings, Mr. Reed's response to treatment, and clinical evidence of limited range of motion in the cervical and lumbar spine, tenderness, muscle spasms, weakness in the upper and lower extremities, and an antalgic gait [R. 387, 540-42, 544-46]. It was based on years of treatment. Nevertheless, the ALJ decided that Dr. Cha's opinions were not substantiated because Mr. Reed was found "neurologically intact" with

negative straight leg raising tests and no evidence of nerve root compression on diagnostic imaging [R. 598-99]. The ALJ provides no explanation for why these findings medically undercut Dr. Cha's conclusions—and perhaps more to the point to avoid playing doctor, she relies on no medical opinion that those findings should undercut Dr. Cha's opinions. She uses Dr. Goldstein's opinions to contrast with Dr. Cha's opinions, but never on this point [R. 599].

The Commissioner, seeking to dispute Mr. Reed's argument that the ALJ was playing doctor, cites to legal authority that shows that the ALJ is required to evaluate the medical evidence of record. That much is true. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) (requiring an evaluation of the degree to which an opinion is consistent with and supported by the evidence of record); *see also Carroll v. Astrue*, 2009 U.S. Dist. LEXIS 108305 at 31-32 (N.D. Ind. Nov. 19, 2009) (Cosbey, J.) (recognizing it is the ALJ's role to weigh conflicting medical evidence and resolve conflicts, and the ALJ "did just that, toiling through numerous medical opinions of record to resolve the conflicts"). The problem with the analysis is that the ALJ relied on her own opinion of what she believed to be contradictory medical evidence—namely, diagnostic imaging related to nerve root compression and negative straight leg raising tests—without citing to any other medical authority that substantiated these viewpoints, or why they mattered, and then didn't point to substantial evidence in the record to support that conflicting viewpoint. *See Vanprooyen*, 864 F.3d at 573 ("ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice"); *see also Clifford*, 227 F.3d at 870.

There appears then to be three erroneous determinations by the ALJ regarding so-called inconsistencies in Dr. Cha's opinion. That said, the record contains multiple opinions from other medical professionals that may offer a wider view of Mr. Reed's capabilities—opinions from Dr. Goldstein [R. 599], Dr. Ruiz [R. 597], Dr. Eskonen [R. 597], Dr. Inabnit [R. 594], and Dr. Sands [R. 597]. The ALJ's job is to weigh conflicting medical evidence and to create a logical bridge from that

evidence to conclusion. *See Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). It may be the case that ultimately the ALJ's opinion is correct; nevertheless, the ALJ didn't build an "accurate and logical bridge" between the evidence and her conclusion by relying on these erroneous views of inconsistencies within Dr. Cha's opinion. *See Craft*, 539 F.3d at 677-78.

Here, the court is confined to the bridge the ALJ articulated. When an ALJ commits error, reversal is required unless the error is harmless. *Keys v. Barnhart*, 347 F.3d 990, 994-95 (7th Cir. 2003). Harmless error occurs when "it is predictable with great confidence that the agency will reinstate its decision on remand because the decision is overwhelmingly supported by the record though the agency's original opinion failed to marshal that support." *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010). The court cannot say that the ALJ's errors here were harmless. It may be that, on remand, the ALJ again decides that Mr. Reed is not entitled to benefits based on proper medical opinions that undercut Dr. Cha and that have the support of substantial evidence; but such an outcome is not "predictable with great confidence" given the number of errors here and the court's inability to recreate how much those noted inconsistencies drove the ALJ's reasoning and decision.

Accordingly, remand or an award of benefits is appropriate. Normally, this court remands decisions for further proceedings before the ALJ. An award of benefits is appropriate, however, "if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). That isn't the case here. Remand is warranted.

B.     *The ALJ Properly Evaluated Mr. Reed's Subjective Symptom Statements.*

While remand is required on the first objection, the court nonetheless analyzes Mr. Reed's second argument for remand so that the parties and ALJ may have a better understanding of the scope of review. Mr. Reed argues that the ALJ failed to properly evaluate his subjective statements regarding his pain.

An ALJ follows a two-step process to evaluate a claimant's subjective complaints. First, the ALJ determines whether the claimant has a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. §§ 404.1529(a-b), 416.929(a-b); SSR 16-3p, 2017 WL 5180304 at 3. Second, once the existence of a medically determinable impairment that could reasonably be expected to produce the claimant's symptoms is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms to determine the extent to which they impose work-related functional limitations. 20 C.F.R. §§ 404.1529(a), 416.929(a). Because an ALJ is in the best position to evaluate the credibility of a witness, the ALJ's consideration of the claimant's symptom testimony is entitled to "special deference." *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). If an ALJ's determination is grounded in the record and she articulates her analysis of the evidence "at least at a minimum level," *Ray v. Bowen*, 843 F.2d 998, 1002 (7th Cir. 1988) (citation omitted), creating "an accurate and logical bridge between the evidence and the result," *Ribaudo v. Barnhart*, 458 F.3d 580, 584 (7th Cir. 2006) (citation omitted), her determination will be upheld unless it is "patently wrong," *Powers*, 207 F.3d at 435. *See Ray v. Berryhill*, 915 F.3d 486, 490 (7th Cir. 2019) (it is a "rare case in which the claimant can overcome the 'considerable deference' [the court] afford[s] such findings unless they are 'patently wrong'") (quoting *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) (remanding an ALJ's consideration of a claimant's symptom testimony because the ALJ's decision was based on "serious errors in reasoning rather than merely the demeanor of the witness").

The Code of Federal Regulations lists many factors an ALJ should consider when evaluating a claimant's symptoms, including pain. *See* 20 C.F.R. § 404.1529(c). These factors include the objective medical evidence; the claimant's prior work record; statements made by the claimant about her symptoms; the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side

effects of any medication taken for symptoms; treatment for symptoms (other than medication); and any other measures used to relieve symptoms. 20 C.F.R. §§ 404.1529(c)(1-3).

The ALJ considered Mr. Reed's statements to his medical providers and at the hearing about his symptoms [R. 592-93]. As the ALJ noted, Mr. Reed alleged disability based on back pain secondary to cervical spinal stenosis, herniated discs, arthritis, and degenerative disc disease [R. 592]. He reported having limited mobility, lost dexterity in his hands, pain and headaches, and difficulty doing simple things like showering [*Id.*]. He reported that he could not stand for more than 15 minutes; he could sit for up to 1.5 hours; and he could lift up to 15 pounds [*Id.*]. He reported that he couldn't bend his fingers and that his fingers had no feeling, though he could turn the pages in a book and he used the computer for a couple of hours a day [R. 593]. He reported that humid weather made his pain worse and that he had a poor memory and short attention span [R. 592-93]. The ALJ considered Mr. Reed's testimony that his pain medications and injection therapy, overall, kept his pain at a tolerable level, but some days his pain was so bad that he was unable to get out of bed [R. 593, 633].

The ALJ considered Mr. Reed's treatment history, his medical opinions, and the objective medical evidence, and discussed them for several pages [R. 593-99]. The ALJ discussed the physical examinations and that he continued to receive conservative treatment [R. 596]. The ALJ acknowledged that Mr. Reed had some waxing and waning of chronic pain complaints [R. 592, 596].

The ALJ noted that the record didn't contain updated diagnostic tests suggesting serious problems, such as nerve root compromise, and noted that diagnostic tests before Mr. Reed's alleged disability onset date showed no significant abnormalities [R. 593, 596]. A cervical spine myelogram dated in 2010 demonstrated only mild multilevel spondylitic changes and some mild canal stenosis at C3-4, but the nerve roots were fine with no significant impingement [R. 318, 593]. This prompted Mr. Reed's neurologist to state that since the myelogram did not show anything specifically that could be causing his pain, he should be treated with pain management, which he started in 2011 [R. 318, 593].

A November 2011 cervical spine MRI showed degenerative disease at C5-C7 with no acute abnormality and no documented cervical stenosis [R. 321, 593]. A November 2011 lumbar spine MRI showed a minor bulging disc and spur with mild foraminal narrowing bilaterally at L4-5; posterior ligamentous thickening and facet arthropathy resulted in mild central canal narrowing at L2-3 through L4-5; but no evidence of focal disc herniation or severe central canal stenosis at those levels [R. 322, 593]. These tests pre-date Mr. Reed's alleged disability onset date, yet the assessed RFC for work at the sedentary level tended to account for any positive diagnostic test findings [R. 593-94].

Mr. Reed argues that the ALJ violated the prohibition that she may "not reject [his] statements about the intensity and persistence of [his] pain or other symptoms or about the effect [his] symptoms have on [his] ability to work solely because the available objective medical evidence does not substantiate [his] statements," 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2), arguing that complaints of pain "need not be confirmed by diagnostic tests," *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015); *see also Adaire v. Colvin*, 778 F.3d 685, 687 (a "recurrent error" made by ALJs is "discounting pain testimony that can't be attributed to 'objective' injuries or illnesses"). This isn't what the ALJ did here, though, because she didn't rely solely on the objective medical evidence. Instead, the ALJ applied the multi-factor test and considered evidence of all types in assessing Mr. Reed's credibility.

The ALJ considered Mr. Reed's medication regimen and other treatment methods. She acknowledged that Mr. Reed took pain medication and tried different methods of treatment to alleviate his pain. In addition to the prescribed medication, Mr. Reed received injection therapy, on and off, for years as his primary treatment modality [R. 593-96]. Dr. Inabnit determined that Mr. Reed was "definitely not a surgical candidate" and indicated that he "would treat [Mr. Reed] conservatively." [R. 377]. The ALJ noted that he did not require a back brace or cane [R. 596].

The ALJ noted that Mr. Reed did not have repeated hospitalizations or require emergency room intervention due to extreme levels of pain [*Id.*]. Mr. Reed objects that this is not a relevant

consideration, saying that there is no requirement that a claimant be hospitalized, seen on an emergency basis, or to otherwise undergo particular forms of treatment to be found disabled. Although there is no requirement that the claimant be hospitalized or seen on an emergency basis, it is one of the considerations for subjective symptom testimony. *See* 20 C.F.R. §§ 404.1529(c)(2-3); *Spaulding v. Astrue*, 702 F. Supp. 2d 983, 998 (N.D. Ill. 2010). This evidence, combined with the other evidence of record, helps build the logical bridge from the evidence to the ALJ's conclusion.

Mr. Reed also objects to the ALJ's characterization that Mr. Reed's treatment was "conservative" [R. 594]. This circuit has upheld an ALJ's characterization of treatment as "conservative" on some occasions. *See Olsen v. Colvin*, 551 F. Appx. 868, 875 (7th Cir. 2014) (ALJ properly characterized treatment as conservative when claimant saw pain-management specialist only once every 6-8 months and her orthopedic surgeon only once a year, and steroid injections were most invasive treatment claimant received); *Simila*, 573 F.3d at 519 (ALJ properly characterized claimant's treatment of "various pain medications, several injections, and one physical therapy session" to be "relatively conservative"). On another occasion, this circuit has rejected an ALJ's characterization of treatment as conservative. *See Huber v. Berryhill*, 732 F. Appx. 451, 453, 456-57 (7th Cir. 2018) (ALJ committed error by characterizing treatment as conservative when it included radiofrequency ablation and injections in the spine). Synthesizing these cases, the question before the court is whether the ALJ provided "substantial evidence" for her conclusion that the treatment was conservative, *see Craft*, 539 F.3d at 673, which gives "deference" to an ALJ's factual determinations, *see Simila*, 573 F.3d at 519.

The ALJ's reference to conservative treatment appears related solely to the treatment of injection therapy [R. 594]. Injection therapy has been upheld as "conservative care" on multiple occasions. *See Olsen*, 551 F. Appx. at 875; *see also Frazier v. Berryhill*, 2019 U.S. Dist. LEXIS 4640 at 22 (N.D. Ill. Jan. 10, 2019) ("Treatment recommendations such as injections and physical therapy constitute conservative care."). Accordingly, there is substantial evidence for the ALJ's conclusion that

the treatment through injection therapy was conservative. The court finds no error in the ALJ's statement.

CONCLUSION

Although the ALJ properly evaluated Mr. Reed's subjective complaints, on this record the ALJ didn't build a logical bridge from the evidence to her conclusion that Dr. Cha's opinion was entitled to lesser weight. Accordingly, the court GRANTS Mr. Reed's motion (ECF 10) and REMANDS the case for further proceedings.

SO ORDERED.

June 11, 2020                                    s/ Damon R. Leichty
                                                 Judge, United States District Court